**RUSSELL v. ST. LOUIS & S. W. RY. CO. OF TEXAS. (No. 1443.)\***

(Court of Civil Appeals of Texas. El Paso. March 22, 1923. Rehearing Denied April 19, 1923.)

1. **Carriers** ☞258—**Contracts between railroads and publishers for exchange of transportation for advertising subject to statutory limitation.**

Under the Acts 30th Leg. (1907) c. 42, § 2, as amended by Acts 32d Leg. (1911) c. 83, § 2 (Vernon's Ann. Pen. Code 1916, art. 1533), permitting contracts between railroads and newspaper publishers for transportation in exchange for advertising, the form or terms of such contract are not prescribed, and the only restrictions are that such contracts shall be upon the same basis of charge as is charged the public generally for a like service, and the exchange be on a basis of value received in all cases, and that the contracts be approved by the Railroad Commission and filed in its office.

2. **Carriers** ☞13(2)—**Refusal to honor mileage coupons after time limit neither extortion nor discrimination.**

Conditions of mileage coupons exchanged with a newspaper publisher for advertising, fixing a time limit, and naming the person entitled to use them, and withholding pro rata value of unused mileage, upon the holder's failure to redeem the same, are not extortion under the statute, nor unjust discrimination in the absence of allegation that timely demand was made for transportation, and that limitations complained of were not included in mileage coupons issued to other publishers.

3. **Carriers** ☞13(2)—**Limitations in mileage coupons not discriminatory.**

There was no unjust discrimination by a railroad against a publisher where there was no showing that limitations in mileage coupons issued in payment of advertising were not similar to limitations contained in all mileage coupons issued to other publishers for like contemporaneous services.

4. **Carriers** ☞20(10)—**Publisher exchanging advertising for transportation cannot recover penalty for discrimination without allegations that other publishers were favored.**

A newspaper publisher, to recover damages and the statutory penalty for extortion and unjust discrimination, must show in his petition that he was treated in the contract or mileage coupons differently, to his injury, than other publishers or editors.

Appeal from District Court, Comanche County; J. R. McClellan, Judge.

Suit by L. B. Russell against the St. Louis & Southwestern Railway Company of Texas. Judgment for defendant, and plaintiff appeals. Affirmed.

Smith & Woodruff, of Comanche, for appellant. E. B. Perkins and W. B. Hamilton, both of Dallas, and A. R. Eidson, of Hamilton, for appellee.

WALTHALL, J. L. B. Russell, appellant, brought this suit against appellee railway company to recover $2.90 plus 13 cents transportation tax paid to appellee, alleging that the railway company had theretofore issued to him, under a contract for advertising, substitute scrip or mileage coupon books issued primarily, under section 2 of chapter 42, General Laws of the Thirtieth Legislature, and acts amendatory thereof; that the substitute scrip or mileage coupon books were issued to him in 1917 for actual services rendered by him to the defendant company;

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

*Writ of error dismissed for want of jurisdiction June 6, 1923.

that said substitute mileage coupon books were issued under certain restrictions, complained of in the petition, among them that he was required to designate the person to whom the coupon was to be issued, and that he was limited in the time within which it could be used, and not thereafter; that the restrictions placed upon the coupon book, in the issuance of it deprived plaintiff of the right to use it for transportation at the expiration of the limitation period, and that defendant company refused to redeem the unused portion of the coupon book, and refused on demand to refund the $2.90 and the transportation tax.

Plaintiff sued to recover the $2.90, the value of the unused portion of the coupon with interest, and the transportation tax. Plaintiff further alleged:

That by withholding said sum of $2.90 and said tax and refusing to redeem same defendant "did unlawfully charge, collect, and demand from plaintiff a greater rate, charge, and compensation than that fixed and established by the Railroad Commission of Texas for the transportation of passengers over its lines of railway for the services actually rendered by defendant, and is therefore guilty of extortion, and liable to pay to plaintiff the sum of $500 statutory damages; that defendant, by withholding said sum of $2.90 and the tax thereon, as aforesaid, did unlawfully charge, demand, collect, and receive from plaintiff a greater compensation for services rendered by it than it charged, demanded, collected, and received from other persons, firms, and corporations doing a like and contemporaneous service, and is therefore guilty of unjust discrimination as against plaintiff and as in favor of such other persons, and thereby became liable to pay plaintiff the sum of $500 statutory damages; that defendant, by imposing an arbitrary and unlawful period of time within which it would agree to redeem the said coupons in transportation, and by instructing its agents by said printed limitations not to accept the said coupons in exchange for transportation thereafter, and by restricting plaintiff's right to receive transportation in exchange for the same if presented by any other person than in whose name said coupons were issued, and by instructing its agent to forfeit the same against plaintiff, and to confiscate the same from him and his further use, gave an undue and unreasonable preference and advantage to the public over plaintiff for the same value, and subjected a particular 'description of traffic, to wit, that class of passenger transportation paid for in advance in advertising instead of purchased with money, to undue and unreasonable prejudice, delay, and disadvantage, and thereby was guilty of unjust discrimination as against plaintiff and in favor of other purchasers of transportation, and for so doing became liable to pay plaintiff the sum of $500 statutory damages."

Plaintiff also sued for $100 attorney fees, and asked judgment for the $2.90 and interest, the transportation tax, and the statutory damages as above alleged.

The defendant answered by a general demurrer; which was by the court sustained, and plaintiff refusing to amend, the cause was dismissed on the general demurrer, to which plaintiff excepted, gave notice, and perfected his appeal.

## Opinion.

Appellant's various assignments of error and the propositions thereunder are predicated upon the action of the court in sustaining the general demurrer to his petition based upon the several articles of the statutes which he invokes, defining extortion and unjust discrimination and fixing penalties therefor.

Section 2 of chapter 42 of the General Laws of the Thirtieth Legislature, and section 2 of chapter 83 of the General Laws of the Thirty-Second Legislature (Vernon's Ann. Pen. Code 1916, art. 1533), amendatory thereof, of what is known as the Anti-Pass Law, so far as they apply at the several times and to the facts here stated, are the same. The portion of said section applicable to the making of the contract for the transportation here involved provides:

"That nothing in this act shall be construed to prevent the right of contract between railway companies and publishers, editors or proprietors of newspapers or magazines from making an exchange of mileage for advertising space in such newspapers or magazines; and provided, further, that the contract between the railway companies and publishers, editors or proprietors of such newspapers shall be upon the same basis of charge as is charged the public generally for a like service, and that the said exchange shall be on a basis of value received in all cases and providing that such contract shall be in writing and shall not be operative until approved by the Railroad Commission of this state and filed in the office of the Commission as a part of the records thereof, subject at all reasonable times to public inspection."

While the petition does not so allege, but for the purpose of the matter we think to discuss, we indulge in the presumption, in the absence of an allegation to the contrary, that the written contract between appellant and appellee, and under which the substitute mileage coupons were issued, was duly approved by the Railroad Commission of this state and filed in the office of that department as a part of the records thereof. Otherwise, under section 2 of the Anti-Pass Law, above quoted, the contract for the free transportation would seem to have no value as a contract for transportation, and the mileage coupons issued in discharge of the contract could have no value for transportation beyond that of the contract.

[1] The law authorizing the making of such a contract does not prescribe its form or terms, nor does the law prohibit the railroad company from designating in the contract or mileage coupon the person entitled to use same, nor does the law limit the time

within which the mileage coupon shall be offered in exchange for transportation or redeemed, nor that it must be redeemed when offered for redemption, and provides only that such contract must be between the railway company and the publisher, editor, or proprietor of a newspaper, and shall be upon the same basis of charge as is charged the public generally for a like service, and the exchange be on a basis of value received in all cases, must be approved by the Railroad Commission and filed in the office of the Commission as a part of its records.

If the limitations placed upon the mileage coupon when offered by the company, or for any reason the coupon does not serve as a basis of exchange for transportation over the company's lines of railroad, the appellant need not accept the coupon. Where there is an acceptance of the coupon, it would seem that, as between the parties themselves, the limitations would be waived.

[2] We have concluded that the fixing of the time limitation upon a mileage coupon by the railroad company within which the coupon must be presented for transportation, nor the naming in the coupon the person entitled to use the coupon or present same for transportation, and the withholding of the pro rata value of the unused portion of the mileage coupon, or failure to redeem the same, does not constitute a charging, collecting, demanding, or receiving from appellant of a greater rate, charge, or compensation than that fixed and established by the railroad company for the transportation of passengers or for any other service to be performed by the railroad company, so as to make the railroad company guilty of extortion, as defined by the statute and amenable to the penalty or damage for so doing. Nor would such facts constitute unjust discrimination as defined by the statute, and especially in the absence of allegations that appellant presented his mileage coupons to the railroad company within the time limit stated in the coupon, and demanded transportation thereon, and such transportation was refused, and especially should the allegation be made, we think that such limitations as are complained of were not placed upon the mileage coupons issued by the railroad company to other publishers for a like and contemporaneous service.

[3] We cannot see how there could be unjust discrimination against appellant, or undue performance or advantage to any other publisher, unless it be shown that the company placed the limitations complained of on the mileage coupons issued to appellant, and did not place similar limitations upon mileage coupons issued to other publishers for a like and contemporaneous service. Such allegations are not found in the petition. In other words, it does not appear that appellant's scrip or mileage coupon book was in any way different from that issued to any other publisher. It seems also a fair presumption that the limitations complained of were approved of if not directed by the Commission.

There is no allegation that appellant charged more for the service rendered than any other publisher was charged for similar service under like and contemporaneous service.

[4] Appellant's petition brings him under the class of a newspaper publisher or editor exchanging space for mileage under the authorities quoted above given in the Anti-Pass Law of this state, and, to entitle him to recover the damages sought for extortion or unjust discrimination, it must appear from his petition that he was treated in a contract or mileage coupons issued him differently, to his injury, than was some other publisher or editor. He shows that his mileage scrip was issued to him for about $40 worth of service about November, 1917, and by the company extended through the years to the 31st of December, 1919; that he had accepted and used the transportation with the limitations complained of printed thereon, except as to the $2.90, and, having failed to use the coupons to the full value as above within the required time, or present same for transportation at any time, and the company having refused to redeem in money the unused portion, he alleges extortion and discrimination, and seeks to recover the penalty prescribed by the statute therefor.

While the facts are different, the Fort Worth Court, we think, has clearly stated the law that applies to the pleading in such cases, in Fort Worth & Denver City Ry. Co. v. Frazier (Tex. Civ. App.) 191 S. W. 808.

The trial court was not in error in sustaining the exception.

The case is affirmed.